OPINION
{¶ 1} Defendant-appellant, Lewis R. Patterson, appeals his convictions and sentences on two counts of having weapons while under disability with firearm specifications following a jury trial in the Butler County Court of Common Pleas. We affirm.
 {¶ 2} Appellant was indicted in August 2000 on one count of murder in violation of R.C. 2903.02(A), and on two counts of having weapons while under disability in violation of R.C. 2923.13(A)(2) and (3) with firearm specifications in violation of R.C. 2941.145. The charges stemmed from an incident which occurred on July 9, 2000 wherein appellant allegedly fatally shot Donald Downard in the head during a drug transaction. Appellant's murder charge was tried separately before a jury. In December 2000, appellant was convicted of murder and subsequently sentenced to a prison term of 15 years to life. Appellant's murder conviction and sentence were upheld by this court in State v.Patterson, Butler App. No. CA2001-01-011, 2002-Ohio-2065. A jury trial held on August 27-29, 2001 on appellant's weapon under disability charges revealed the following facts:
 {¶ 3} In the early hours of July 9, 2000, Downard and another, unidentified male, approached Eric Black (a.k.a. "Pokey Man"), and asked him where they could get some "dope." Black got into the pickup truck driven by Downard and directed the two men to an apartment complex on Beckett Drive, in Hamilton, Ohio. They stopped at 1108 Beckett Drive, and Black exited the truck. Appellant was outside the apartment. Black approached appellant and told him he "needed thirty," or $30 worth of crack cocaine. Appellant handed Black the cocaine, told him that he had a gun, and stated, "don't let these guys pull off with my dope or I'm going to shoot that truck up."
 {¶ 4} Black returned to the truck. Downard and the other man were apparently unsatisfied with the drugs, and asked for more. Black indicated to them that he could not do any better, and that appellant had a gun. Downard replied that he "don't care about nobody with no gun," and lifted his shirt to display multiple gunshots and stab wounds. As the three argued over the purchase of the drugs, Downard started the truck and began driving away very slowly. Four shots rang out. Black ducked. The unidentified man fled. When Black looked up, he observed appellant walking away and putting something in his pants. Black then fled the scene as well.
 {¶ 5} Lavada Jones observed the shooting. Although she did not immediately inform the police she had witnessed the shooting, she sought the police later that day and told them what she had seen. On that fateful day, Jones lived at 1110 Beckett Drive, and had been living there for about a year and a half. Appellant and his girlfriend, Sharelle Walton, lived next door at 1108 Beckett Drive. The night of the shooting, Jones was sitting outside her apartment with appellant and Walton when a truck pulled into the parking lot.
 {¶ 6} A man known to Jones as Pokey Man got out of the truck and approached appellant. Jones observed appellant hand Pokey Man something which he carried back to the truck. Jones saw the passenger shake his head, and the driver started the truck. Pokey Man yelled something to appellant who went into his apartment. Jones observed appellant re-emerge from the apartment with a gun in his hand behind his back. Jones then observed appellant walk over to the driver's side of the truck and begin shooting. As he was about six feet away from the truck, appellant fired his gun four or five times. Jones then saw Pokey Man and the passenger run away, and watched appellant return to his apartment. Shortly thereafter, appellant left the apartment and took off running. Jones' view of the scene was unobstructed.
 {¶ 7} Shamica Benson, Walton's 14-year-old niece, was staying with appellant and Walton that night at 1108 Beckett Drive. Sometime during the night, Benson was awakened by her aunt. Crying, Walton told her niece that appellant had shot someone. Appellant then came in the room and asked them to hide the guns. Benson refused and appellant left the apartment. Although she did not see the gun that night, Benson had seen guns in the apartment before, in the cabinet above the stove, put there by appellant.
 {¶ 8} Following a 9-1-1 call by a neighbor, police officers from the Hamilton Police Department were summoned to the 1100 block of Beckett Drive. There, they found Downard slumped over the passenger seat of the truck. His head was bleeding. Downard was transported to a hospital where he was pronounced dead. An autopsy revealed he had bled to death as a result of two gunshot wounds to the head.
 {¶ 9} Upon receiving Jones' statement, Hamilton police obtained a warrant to search appellant's home. There, they found a holster in the cabinet over the stove as well as boxes of different caliber ammunitions in the bedroom upstairs. The weapon used against Downard was never recovered. Appellant was subsequently arrested and indicted for Downard's murder. While he and Black were awaiting arraignment together in the courtroom, appellant told Black that he was the only one who could implicate him and that if he kept his mouth shut, appellant would take care of him. Appellant also told Black that Jones was changing her testimony.
 {¶ 10} On August 29, 2001, a jury found appellant guilty on two counts of having a weapon while under disability (Counts Two and Three of the indictment) with firearm specifications. Following a sentencing hearing, the trial court found that the two weapon under disability charges were allied offenses of similar import. As a result, no sentence was imposed on Count Three. The trial court, however, sentenced appellant on Count Two to a 12-month prison term and to a consecutive three-year prison term for the firearm specification, both to be served consecutively to appellant's 15 year to life sentence for Downard's murder. Appellant now appeals, raising two assignments of error.
 {¶ 11} In his first assignment of error, appellant argues that his convictions for having a weapon while under disability were against the manifest weight of the evidence. Appellant admits he was under disability under both R.C. 2923.13(A)(2) and (3), but argues the record fails to conclusively establish he was the person who used the gun at issue.
 {¶ 12} In order for an appellate court to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. State v. Thompkins,78 Ohio St.3d 380, 389, 1997-Ohio-52. Specifically, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 13} Upon reviewing the record and weighing the evidence, we cannot find that the jury lost its way or committed a manifest miscarriage of justice by finding appellant guilty of having a weapon while under disability. Upon handing the drugs to Black, appellant warned him that he had a gun and that he would use it if necessary. After the shooting was over, Black observed appellant put something in his pants while walking away. After their arrest and while they were awaiting arraignment, appellant told Black he would take care of him if he kept his mouth shut.
 {¶ 14} Unlike Black, Jones observed the entire shooting. Jones observed appellant enter the apartment at 1108 Beckett Drive, re-emerge from the apartment with a gun in his hand, and shoot the driver's side of the truck four or five times. She then observed him return to the apartment before leaving it minutes later, running. That night, Benson was awakened by her aunt who told her appellant had shot someone. Moments later, appellant came in the room and asked Benson to hide the guns, which she refused. Although she did not see the murder weapon that night, Benson had seen guns in the cabinet over the stove, put there by appellant. A search of 1108 Beckett Drive yielded a holster in the cabinet over the stove as well as ammunitions in the bedroom upstairs. Detective John Marcum of the Hamilton Police Department testified that the bullets found in the apartment were of the same type as the bullets retrieved at the crime scene, that is, "[f]ull jacket. Metal. Copper jacketed bullets."
 {¶ 15} Appellant nevertheless argues that the testimony of Black and Jones was not credible as Jones had been drinking all day and taking antidepressant drugs the day of the shooting, and as Black had pending felony charges against him.
 {¶ 16} A review of the record shows that the foregoing allegations against Black and Jones were before the jury. Black admitted that he had six pending felony charges, three for drug trafficking and three for drug possession. Black testified that his conversation with appellant while awaiting arraignment occurred after he had talked to the police, and that no deal was ever offered for his statements to the police. Black also testified he had not been charged for his participation in the drug transaction involving Downard.
 {¶ 17} At appellant's trial for the weapon under disability charges, Jones denied she was drinking the night of the shooting or that she had been drinking all day. Jones also denied she was taking any medication that day. Jones admitted she had previously testified to the contrary, that is, that she was drinking that night, that she had been drinking all day, and that she usually drank a case a day. Jones also admitted she had made the statement that she was taking Prozac for depression and that as a result, she would at times hallucinate. Jones testified she had previously testified differently because she was afraid of repercussions from appellant's family.
 {¶ 18} Jones' contradictory testimony and Black's pending felony charges were before the jury who was in the best position to determine the credibility of the witnesses and testimony. Upon reviewing the record, we find that the testimony and evidence provided substantial evidence upon which the jury could have reasonably found appellant guilty of having a weapon while under disability. We therefore find that appellant's convictions were not against the manifest weight of the evidence, and overrule appellant's first assignment of error.
 {¶ 19} In his second assignment of error, appellant argues that the trial court erred by imposing "consecutive, 12-months sentences for Counts two and Three." Appellant contends that the trial court failed to state its reasons for imposing consecutive sentences in violation of R.C. 2929.19(B)(2)(c).
 {¶ 20} An appellate court may not disturb a sentence imposed under felony sentencing unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. R.C.2953.08(G)(1); State v. Garcia (1998), 126 Ohio App.3d 485, 487. At the outset, we fail to see how the trial court erred by imposing consecutive sentences on Counts Two and Three of the indictment when it did not impose a sentence on Count Three. Indeed, while appellant was convicted
under Counts Two and Three, he was only sentenced under Count Two. Assuming, however, that appellant is challenging the trial court's order that the three-year prison term for the firearm specification be served consecutively to the 12-month prison term under Count Two, we find that this argument has no merit for the following reasons.
 {¶ 21} Appellant was convicted of two counts of having a weapon while under disability in violation of R.C. 2923.13(A), felonies of the fifth degree. The prison term for a fifth-degree felony ranges from six to 12 months. R.C. 2929.14(A)(5). Appellant was sentenced to the longest prison term available, which he does not challenge on appeal.
 {¶ 22} Appellant was also convicted of one count of firearm specification in violation of R.C. 2941.145. Revised Code2929.14(D)(1)(a)(ii) provides that if an offender convicted of a felony is also convicted of a firearm specification pursuant to R.C. 2941.145, the trial court must impose an additional three-year prison term for the firearm specification violation. Appellant was sentenced to an additional three-year prison term for the firearm specification, as required under R.C. 2929.14(D)(1)(a)(ii).
 {¶ 23} Pursuant to R.C. 2929.14(E)(4), a trial court may impose consecutive terms of imprisonment if it finds that (1) the consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) the consecutive terms are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the factors listed in R.C. 29292.14(E)(4)(a) through (c) applies. The trial court must state sufficient supporting reasons for the imposition of consecutive sentences. R.C. 2929.19(B)(2)(c); State v. Edmonson, 86 Ohio St.3d 324,326, 1999-Ohio-110. Appellant concedes, and the record shows, that the trial court made the required findings under R.C. 2929.14(E)(4).
 {¶ 24} While R.C. 2929.14(E)(4) gives a trial court the option to impose consecutive sentences, R.C. 2929.14(E)(1) through (3), however, requires a trial court to impose consecutive sentences. Applicable to appellant is R.C. 2929.14(E)(1)(a) which states in relevant part that:
 {¶ 25} "[I]f a mandatory prison term is imposed upon an offender pursuant to [R.C. 2929.14(D)(1)(a)] for having a firearm on or about the offender's person or under the offender's control while committing a felony, * * * the offender shall serve any mandatory prison term imposed under [R.C. 2929.14(D)(1)(a)] consecutively to and prior to any prison term imposed for the underlying felony pursuant to [R.C. 2929.14(A)] and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender."
 {¶ 26} R.C. 2929.14(E)(1)(a) clearly mandated that the sentence for the firearm specification violation be served consecutively and prior to the sentence imposed for the weapon under disability violation. Under R.C. 2929.14(E)(1)(a), the trial court was required to impose the sentences consecutively by operation of the law once it imposed a prison term upon appellant for the firearm specification violation. In Statev. Wilson, Clermont App. No. CA2001-09-072, 2002-Ohio-4709, we recently held that when a trial court is required to impose consecutive prison terms pursuant to R.C. 2929.14(E)(1) through (3), it need not state supporting reasons for the imposition of such consecutive sentences as normally required under R.C. 2929.19(B)(2)(c). See, also, State v.Clark, Hamilton App. No. C-010532, 2002-Ohio-3135.
 {¶ 27} We therefore find that the trial court did not err by imposing consecutive sentences for the weapon under disability and firearm specification violations. Appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.